The next case is in re. HALPER, Blake Joseph Lindemann appearing for appellant, and Alan Lee Sarver appearing for appellate. Mr. Lindemann, do you wish to reserve time? I do, Your Honor. I could reserve three minutes. All right, thank you. You may proceed. May it please the Court, Your Honors. My name is Blake Lindemann. I represent the appellant Shelly Halper. The first error that the bankruptcy court made was not applying the proper pioneer Briones test issued by the United States Supreme Court in the Ninth Circuit Court of Appeal. Is that really the test? Isn't the fault test the one that we apply when we're dealing with the Rule 60b-1 motion to vacate a default based on excusable neglect? You know, I've seen the Briones pioneer test applied, or at least the factors looked at in context of a default. I'm happy to address some of the other subsidiary factors. I think a lot of them overreact. There's overlap. Right, there's significant overlap. But, you know, we think it's relevant that in Bateman and the Limoge case, the Ninth Circuit said, look, you've got to look at each of these factors where it constitutes an abuse of discretion. Go through them, because, I mean, as I read the transcript, I'll agree that the judge didn't call them out with specificity, but she seems to have hit the high points on both Falk and Pioneer. So I think, you know, Judge Mund is a very good judge. She's a very practical judge. But we believe the specific factors of this case necessitate a closer look. And the judge was singularly Are you saying she didn't do it, or she just did it all wrong? Both. I'm saying she didn't look at the factors, all the factors, and when she looked at each factor, she evaluated it incorrectly. And I think it's because she was just tired of the case. And I think that happens to all judges sometimes. They say, a lot of water is coming to the bridge, I'm tired of it. But in a Rule 60 context, it requires a fresh look. This is an unusual Rule 60 context. This is an indicative ruling context, which we don't see with great regularity, because you've got an appeal of the underlying decision in the Ninth Circuit. So we've got decision, appeal, affirmance, further appeal, and now all of a sudden, indicative ruling under Rule 60. So this isn't exactly the typical context. I know the procedural morass is a little bit confusing, but the reason that this was done was because we thought that there might be a good reason to vacate this default judgment if the bankruptcy court would look at our offers, our proffers to cure the issue that caused the original terminating sanction issue to arise, that the court of appeal would not be able to look at in deciding whether the entry of the default and default judgment was appropriate. So I think it was an appropriate procedural mechanism to try to employ, to try to say, you know, I came into the case, I said, here's a proffer of the $30,000 remaining sanctions, here's an offer that we'd sit for the deposition, and by the way, now the debtor has sat for an ORAP judgment debtor exam, my advice. But it's really a shame. So I looked at the situation, I said, Rule 60 has case law to allow the default to be cured and to the conduct that gave rise to the default to be vacated. With payment of the original $30,000 that was unpaid, cure the default? Because you had, they were requesting $100,000 for her misdeed. So the judge finds you've acted inappropriately in connection with discovery. They say we want $100,000, the judge says no, I'll make it $40,000, they pay $10,000, they default. As you say, a lot of water under the bridge. And isn't it fair to say that $30,000 doesn't come close to curing? It basically pays the same money, but does it cure? I think it would, because the $70,000 up kick would be a penalty to say, hey, if you don't pay this, you get hit with $70,000, there's case law. We say that such an upswing would be a penalty. I'm not even talking about that. I'm talking about attorney's fees after she fails to make the $30,000. They had to do a default prove up, they had to bring the motion, you know, they spent money because she didn't comply. Isn't that properly compensable when we're talking about cure? Well, if we would have gotten to that point and the judge said you need to cure this, I would have talked to the client and made them do it if they wanted to proceed. We never got to that point. We offered a cure of $30,000. The bankruptcy court didn't say it was the wrong number. The bankruptcy court just said it's too late. It was singularly focused on the issue that bringing the motion was too late, and this is against the body of law in the Ninth Circuit. It's the Weill case that says we have to look at the reasons why the motion isn't brought right away. There's also the Ashford case that says we have to look if there's an appeal pending. That might be a good reason why a motion under Rule 60 wasn't brought. In fact, that was the facts here. There were other good reasons. We had to put a significant amount of money together for a Chapter 7 debtor to pay the $30,000 in sanctions. She had to retain counsel. She also had an overlapping criminal investigation in Washington. That she didn't know about at that time. She had never been cleared of it. That was the key. So if you're under a criminal investigation, the key factor, if somebody says, hey, you may be under a criminal investigation, the key factor is that you're cleared. I wasn't there, and I don't disagree with that. I simply think, here's my point. We have to separate, and I think this is a big mistake the Bankruptcy Corps made, separate the reason for giving the default with the default judgment. Okay, if the court says, look, you can't vacate the default, you screwed up, you didn't do this, you didn't do that, fine. But then enter a default judgment and a 523A2A claim on oral representations that occurred after money was loaned, and no prove-up of the actual damages up to $11 million. I mean, and these are things we're addressing in the Ninth Circuit appeal, but it's important to note one of the factors, whether we apply whatever test we apply under 60B, is that we had a meritorious defense. And the facts that we laid to bear have to be assumed as true. So simply, when we filed the motion to vacate, the facts were that she never spoke to Mr. Ferguson, who did the declaration in support of the default judgment. And the promises were made, alleged promises were made after the money was loaned, which under the recent Supreme Court decision last term, that's insufficient to cause an actionable 523A2A fraud claim based on oral misrepresentation. Isn't part of your problem, if Pioneer is applicable and we're looking at prejudice, the fact that you've got these arguments and they're great, but you've seen their default prove-up. You know, how many people get to go to trial having seen the other side present their entire case? How do you undo that form of prejudice? Well, we don't believe it's prejudice looks at whether they have access to evidence  I agree with you that prejudice isn't simply the fact that they might have to do their case. And prejudice isn't, you know, isn't that they might have to go forward. But I'm talking about that, you know, the genie's out of the bottle in some extent. I mean, I haven't practiced law for 11 years, but I certainly didn't want to say to the other side, let me tell you exactly what I'm going to do when I present my case. And I'm going to tell you before you have to do anything so you can spend a couple of years thinking about it and developing a new theory. I mean, I think that's a forgetting the money, you're very focused on the money piece of the prejudice. Isn't that a different kind of prejudice that's going to be impossible to remedy? No, because in the TCI group case, which is a Ninth Circuit case specifically talking about prejudice, that's not one of the factors to look at that the other side had to present their case. In fact, I would say there's absolutely no ---- And that isn't prejudice, or does it simply not list that as a possible form of prejudice? It doesn't list it as a possible form of prejudice, to be clear. Here's why it's not prejudice. The fraud case is based on what my client allegedly said. She didn't get the money. She didn't say anything to this person before the money was loaned to this Mexican project. Let me make sure I understand the process here. I mean, the default means whatever's in the complaint that's factual we're going to take is true, okay? And then one has a default. Except for damages. Right. So if all they proved up is damages, who cares when the representations were made? You blew it. I mean, the default, the effect of the default is the default. I don't believe that's true. Why not? Because you have to prove the fraud damages and proximate cause. Well, isn't that in a prove-up hearing you do that? Yes. In federal court, yes. In state court, you're not allowed to participate. But in federal court, the case law says you're absolutely allowed to participate. Not just the amount of the damages, but whether they're proximately followed. Yes, as the proximate causation, because it relates to the damages. Okay, if you're right, that's a good point. Right. So here's why they're not prejudice. My client will say, and these are facts that are offered as part of the motion of default judgment, to vacate the default judgment, she did not get a penny of the money, her attorney, Mr. Frieden. That's a different kind of prejudice. You're now going to the merits. You're saying they would lose. And I'm saying the prejudice is the fact that they had to preview their case to you, or to her. Not to you, because you weren't the counsel at the time. But, you know, she got an extraordinary litigation advantage. Well, there wouldn't be a litigation advantage because that's the kind of declaration you'd see in a motion for summary judgment. Or, you know, in a rudimentary discovery response. I don't see how a declaration that somebody lied and said somebody said something, which my client says is untrue, would be prejudice to them. That declaration would have to be in anything, any normal pleading filed throughout the course of the case. Did they bring such a motion? They didn't need to because there was an order striking the answer. So there was no reason to do that at that point. But that doesn't mean, you know, I haven't seen one case that says that's the kind of prejudice fund. That somebody in a fraud context, and I'm happy to research it and send a letter 28 on this, a real 28 letter on this, but I don't believe that that's an appropriate grounds. Why don't you go, you're already over, you're very close, excuse me, you deserve three, so four. And I want to get you tied up on that one piece. I appreciate that, Your Honor. The other thing is that there was a meritorious defense, and the judge said that she looked at this akin to a reconsideration standard. She said, well, I'm not going to reconsider what was done. And as we know, you have to show substantial likelihood of prevailing on the merits in the context of reconsideration. The Ninth Circuit has specifically said, our facts in the motion to vacate the default judgment must be assumed as true in the context of whether it's a meritorious defense. So the Bankruptcy Court never fully evaluated it, that issue, first of all, in my opinion, but the brief brush stroke it made was clearly erroneous. The next issue, the Bankruptcy Court says the motion wasn't brought in good faith, but was to delay, which I found peculiar because I'm offering a check, I'm offering to do things. I don't think that's an appropriate finding to say somebody is trying to relieve themselves of $11 million debt, that the motion to do so is brought in bad faith, particularly when we separate whether there's a vacating the default or the default judgment. Particularly vacating the default judgment aspect, the prove up of the damages, there's clearly no culpability or bad faith on my client's part. All right. We're at three, so do you want to keep going or reserve? I just wanted to say, fine, one point, that this bankruptcy appellate panel has also said we need to look at whether there's extreme circumstances. There's a 2011 case that was recently issued, Alden v. Wolkowitz, and we think that court got it right. It granted the motion to vacate the default judgment, saying we have to look at bankruptcy-specific considerations. We think there are extreme circumstances in light of the fact that the debtor's own attorney signed the very promissory note and moved to seek a default judgment against her. These are circumstances that are simply not common. They're extreme, and we have to consider that opposing a $30,000 penalty on a debtor and allowing the debtor time to cure, who's a chapter symbol, is reasonable. It's not a penalty. It's a compensatory sanction for bad faith in discovery. I understand. That's out of bounds. I understand. But the issue is she couldn't afford to pay it, and that's we present evidence. The bankruptcy court said I'm not going to believe that evidence, even though there was nothing in the record suggesting that she could afford to pay. If she couldn't cure monetarily, wasn't the court free to do a terminating sanction at that point? I mean, does the court have to with a debtor who lacks the financial ability to cure the harm? Does the court have no recourse? I mean, here the court found there's a basis for terminating sanctions. As an alternative, I'm going to give you an opportunity to do something lesser. So maybe what you want to think about is having, because I think what you're suggesting is because a debtor can't pay, you can't do anything. And I don't think that's the law. If I could address that on my last minute, I'll come up with a really good answer. Okay, good. We'll give you time. Yes. All right, counsel. Thank you. May it please the court, Alan Sarver for the appellees. I've listened to the comments, and just very briefly in a moment, questions I think are probably the best way to go because I think the briefs are rather complete. But a comment that was made by counsel to start off with is that Judge Munn at some point grew tired of this case. To me, it's just incredible because all we have to do is look at the tentative ruling that was issued by Judge Munn on the Friday night prior to the hearing on the motion to see the time and attention that was paid to preparing an appropriate record because we knew that there was going to be argument. Then we move to the actual transcript of the hearing where all of the issues that are being raised today were, in fact, brought to the attention of the court. And there was no point during the course of that proceeding where the appellant was denied the opportunity to present anything. Judge Munn listened to it all. I was there. Judge Munn listened to it all. It's a part of the record. So to say that she just got tired of it, she's been on the bench way too long to allow a mistake like that to be the reason why, you know, it would be basis for reversal and or remand. The court has already touched on a number of the points that I was going to make. And so rather than start dwelling on those, I would just ask the court if there are specific questions, I'd like to address those. Well, I mentioned the two different tests here, the Pioneer v. Falk. And what do you think is the controlling case law in the Ninth Circuit in this very narrow context? Your Honor, it seems that Pioneer, which also refers to the Brioni's points, would seem to be, to me, the prevailing authority. And in our brief, we went through each of the specifics of those decisions to lay out why it is that the court was correct in analyzing all of the factors that gave rise to the ultimate decision. We went everything from, I mean, the courts know what they are, everything from the prejudice to the ability of the court to manage its docket, et cetera. Everything was there, and we've laid it all out. I don't think that the court wants me to recite them all, but I think that the court went way out of the way to make sure that each and every of the points that are raised in the applicable authority was addressed, both in the tentative ruling, and then, again, when they were raised at the time of the hearing, they were specifically addressed point after point after point. There was nothing that was left unturned. But the judge didn't articulate, she didn't call it the name. Is that in any way of merit? Your Honor, I'm sure that the argument could be made that the mere fact that, you know, would be a basis for reverse and remand, but in reality, to me, if anything else, that would be harmless error, if you will, even if there was an error, which I don't think that there was, but the fact that all of the criterion were addressed, whether it be in Pioneer, whether it be in the Fall case, regardless. And even in Brionis, they're all the same. And the reality is that the case's criterion were all addressed at each point throughout the proceedings. That never changed. All right. Let's talk to me. We spent a good bit of time talking about the issue of prejudice, and he makes the point that, in effect, there was no prejudice here because they would have paid the $30,000 and she would have sat for her deposition and we could just re-up the litigation at that point. Could you respond to that argument? Well, five times prior to that, where she was supposed to sit for deposition, with court orders to appear for deposition and warnings of impending sanctions, which would include terminating sanctions, she failed to appear for her deposition. Abuse of the Fifth Amendment privilege assertion, because the court was very clear in finding later on that the comments that were made in the motion, and I'm going to get back to that in one moment, had no bearing whatsoever on the Fifth Amendment issue that existed in 2015 when the court found that it did not exist. That, in and of itself, there was no basis to demonstrate that, in fact, she would sit for deposition. What I found really strange was that if I were going to be telling the court that I had money to pay the sanctions and it was in my drawer, no, I'm going to attach a copy of that check so that it is evidence before the court. The problem with the motion, one, it has nothing to do, it doesn't have any admissible evidence, and my evidentiary objections on these points were sustained, to demonstrate that, in fact, the funds were available and the evidentiary objections are not the subject of appeal. So there was no evidence that the money was, in fact, there. There was no evidence that, in fact, the money could be made available. There was no evidence that, in fact, that Ms. Halper even had the ability to raise the funds or that those funds were available. There could have been a declaration from the third party that was supplying the funds. If this was a Chapter 13 case and my debtor was going to be relying upon funds of third parties, then I'm going to have to submit declarations by those individuals in order to demonstrate the funds are there. None of that happened. The original motion was really based on two factors. One, there's $30,000 that's available to pay, and secondly, there is now this cooperation agreement, which, again, was not part of the record, and, therefore, it's hearsay. And nothing else. And the court went through all of these points. Where is the evidence? And even after the tentative ruling was issued, which – and then the supplemental SIR reply comes in, and SIR replies, as we know, are not favorable, but the court listened to what was said, but ultimately found that notwithstanding the content of the declaration, that it just wasn't enough. There was still no evidence. And for the court to think that, well, we're going to reverse and remand on grounds that there was a meritorious defense, the court doesn't have to just look at comments that are made by counsel as opposed to the declarant, which should have been in the motion. The motion was filed three weeks before that. How hard would it have been to submit an appropriate declaration demonstrating the existence of a meritorious defense? And, more importantly, let's go back to when the default judgment was entered. Let's go back to the fact that where was the motion for reconsideration? Where was the early motion to set aside the default? Even though there was an appeal pending, which arguably divests this court of jurisdiction, I understand, but the rules provide for the ability to stay the proceedings before the appellate court, go back to the lower court, and have these issues resolved. Had all that happened, would we be standing here today? I don't know. But the fact of the matter remains that what has happened is let's just keep on going down the road. Let's make the appellees continue to spend and spend and spend. The court's already addressed the issue of us having laid out our case completely. But let's spend and spend and spend. And now, when it's all over and the things that could have been done were not done, let's punish the appellee. That just seems, if we talk about, you know, this being a court of equity, that's inequitable. It's also a court of law. We know that. So I just don't see how the underlying motion, the reply, and then the surreply filed after the tentative ruling is issued, which gives the appellant a roadmap to what Judge Mund is thinking so that a declaration can be submitted that can contest everything. That's just wrong, and which is why I think it was disregarded. The question I pose, and I think this is one of the more interesting legal questions here, is I'm sitting in my trial role. I have someone in front of me who I have found will not appear for deposition. Terminating sanctions, I determine, are appropriate, but I have to consider lesser sanctions. To the extent they can't pay the cost, am I precluded from bringing a terminated sanction? I don't believe so, because you have the right to regulate your docket. You can control your courtroom. And the plaintiff in the case, the appellee, has the right to be able to find a complete conclusion to the case. So if somebody can't make the payment, well, okay, fine. The default was entered on a specific date. The default judgment wasn't entered until quite some time later. So if there were a change in circumstances or an additional time needed, another couple weeks, or some basis for coming into court saying, look, I paid the first $10,000. I don't have the other $10,000, $10,000, $10,000, but I can do it over this period of time, and I'm still going to be able to sit for deposition, well, okay, do something. Don't come back a year and a half later and say, without substantiating evidence, without admissible evidence that the funds are there, now I'm going to suddenly sit for deposition when there's no guarantee that, in fact, that's going to happen. There's no guarantee that that Fifth Amendment isn't going to be raised again. No one's seen any cooperation agreement. You have to be able to control your courtroom and your docket for the benefit of everybody that comes in before you and appears and looks for finality in their proceeding. If there are any other questions? No questions. Great questions. Thank you. Thank you. Should I start where I ended? Yes, Your Honor. Under the American check case, the Ninth Circuit said we have to look at whether the party who's violating the court order has a devious mind. And here the factual record shows she believed she was under investigation. And that's not a devious mind to take the advice or whoever's giving advice or acting improper and not sitting for a deposition. Is it bad? Yes. Is it something I would recommend to a client? No. But it is what it is, and it's not as if it's a significant affront to the court, such as some outrageous, sanctionable conduct, to not sit for a deposition. Well, I'm going to take you back, because really it's not. That's not where I ended before. So before I ended with the question of courtroom control, and you're almost out of time, so I'd like you to answer this question. I'm sitting on my court. Your client, I determine, and the issue's in front of the Ninth Circuit, so we're stuck with it for purposes of today, that she's acted improperly in discovery and that it would justify a terminating sanction. She tells me she can't. I have to consider lesser sanctions. I consider a compensatory award to make the other party whole and to some extent a coercive award to make sure she actually shows up. And she tells me I can't pay one thin dime. Correct. What happens? Your Honor, I think that we have to look at the circumstances. And, you know, I haven't seen any bankruptcy opinions issuing terminating sanctions in this setting. I'm happy to do a little research on that. I know that's an issue that's important to you. But I would say that at some point the bankruptcy court has to give up an issue, some kind of serious award. But I think the difference is there's a difference between the terminating sanctions and the default judgment, which we would just ask that this court analyze separately. So I understand your point. Look, what can we do about the terminating sanction order? There might not be a way to cure that. It might be too late. But that's different from saying whether I have a ground, my client has a valid ground to vacate the default judgment. And that's exactly what the court did, this court, this panel did, in Alden v. Wolkowitz. I just want to clarify one thing on the record. The declaration at ER 480 to 484 sets forth why the meritorious defense, that was not struck. There is a cooperation agreement that was part of the record that was submitted under seal. Counsel's incorrect on that front. And simply I would just close with the court is also to look at whether to vacate the judgment, the amount of the judgment. And Judge Munn never really considered that. $11 million is a lot of money. That's why I'm here. If it was $100 grand, I wouldn't waste your time. I wouldn't waste mine. It's too high. It needs to be vacated. I ask that minimum the default judgment be vacated so we can defend and prove it. But this is an indicative ruling, so I'm not vacating anything. I'm telling the Ninth Circuit what I might do. That's what she's doing, correct? Well, I think this court could reverse and go back to the bankruptcy court to vacate the default judgment. That's what we're seeking. It's the same test. I don't think so. I'm not getting the deal. No, procedurally I don't think. She has the option of doing nothing. She has the option of delaying until the Ninth Circuit rules. She has the option of denying the motion, which is what she does. She has the option of saying, I think it's got some merit. That's as far as she gets to go. The mandate is what the Ninth Circuit on. Correct. We'd ask that the derivative ruling be sent back and that a ruling would be made on the motion to vacate the default judgment. Thank you. Thank you very much. Thank you for your good arguments. This will be under submission.
judges: Taylor, Lafferty, Spraker